Please, the court, I'm requesting five minutes in rebuttal time. You can keep an eye on the clock, and whatever you've got left will be used as you please. Briefly, the respondent's argument is straightforward. The literal meaning and language of reinstatement of deportation states that there has to be an illegal reentry of an alien. And simply put, respondent did not enter the United States. Did she have permission to come into the United States? She did not have permission. And she knew that she didn't have permission to come into the United States? We do not dispute that. So the fact that she wore an ice dress and waved to the guard when she came through and that he waved her through without stopping her, did that make her lawful in the United States? There's two entries here, and you're referring to the second entry, which triggered the reinstatement order. Pursuant to the case of Key Lantan, this was a procedural legal entry into the United States of America. But it wasn't substantively? Substantively, she did not have any papers to enter the United States. She did not have permission to enter the state. She did enter into the United States. In fact, she was barred from entering the states, right? She was affirmatively barred from entering. She promised not to? She signed a paper saying she wouldn't. She was actually affirmatively barred from entering the United States. Well, she was said not to re-enter the United States. However, that goes to the issue of the first entry, which is whether that was considered to be an entry for there to be an E. There was an expedited removal order, right? Correct. How can you be removed if you're not in the United States? Well, she was removed, but... But your point is that there was no entry, and therefore there can't be any re-entry, but there was a removal order. So she must have been in the United States in some sense, because you can't... I mean, let's say she were in Mexico, you know, Tijuana. You can't remove somebody from the United States if they are in foreign territory, right? Sure, and we acknowledge... So she must have been here in some sense for there to be a removal order. Correct. I mean, you didn't challenge the removal order? She didn't challenge the removal order as unauthorized? Well, she... At that point, when you get to the border, you're correct. She is in the United States in some shape or form, and an immigration officer makes a determination that she should not be there and she should be removed. Like, what if she is at that point at the border and, to plead hypothetical, let's say she pulls out a gun and shoots somebody? I'm... You understand this is... I mean, it commits some sort of crime. She wouldn't say, well, I'm not punishable under U.S. law because I am not in the United States, right? Correct, but what I'm trying to allude to is the definition of an entry into the United States, which has been acknowledged throughout the court system as going through inspection, coming into the United States, and being free from restraint. And that is the key word here. She certainly was not free from restraint and did not meet the definition of an entry, an actual entry, legal definition of entry into the United States. Why does re-entry have to have the same technical definition as entry? Well, the reason being is one... Why can't re-entry simply mean the second time you've come into the United States, you physically come into the United States? There's no case law on this, right? Correct, and my answer to that would be then the statute on reinstatement of deportation should have said that instead of saying re-entry into the United States, which has been defined as coming into the United States and being free from restraint. Webster defines it as the act of re-entering. Correct, but in terms of precedent, it is defined as coming into the United States and being free from restraint, and I would say... Entry does. It's not clear to me that re-entry has to have the same technical meaning as entry. Let's say, for example, she, instead of being waived by the officer, let's say the same thing happened to her the second time as the first time. She's there, presents herself at the border, she's pulled over the secondary, and they discover at that point that, you know, she is trying to come in illegally a second time. Would you say there was no re-entry? Well, at that point... And no entry at all? Never been an entry? At that point, there would still be no freedom of restraint, and to elaborate on that, what was contemplated in this statute was someone who came into the United States in some shape or form, either through a visa or another means, was found to be illegal in the United States, was given an NTA, went in front of an immigration judge... NTA? A notice to appear in front of an immigration judge, was charged with illegally being in the United States, was able to go in front of an immigration judge, plead their case, prove their evidence, and have that proven. In this situation, the respondent was not able to do that. She simply came to the United States, was determined by an officer, not a judge, to leave, and this is extremely problematic. So you're talking about the first time or the second time? The first time. The first time. And what's extremely problematic about this is that at the border, the first time, it was determined by the officer, based on a hearsay statement without any documentation, that she claimed to be a citizen of the United States, and that is integral, because as a result of that... She could have appealed that, right? No, she could not have appealed that, but if she went in front of an immigration judge, she could have, and what we're asking... I'm sorry, the expedited removal order is not subject to review? No, she was sent out, and she's not able to plead... I mean, she doesn't have to be in the United States to seek review. Well, at this point in time, the problem that she has is that she now has a determination that she claimed to be a United States citizen, and is now barred from life from any immigration benefit. She has no way to challenge that. If she was able to, for instance, be in the United States, be in front of an immigration judge, she would have been able to have the accuser, the officer come forward... That's not the process that Congress has provided for. The Congress has very specifically provided for an expedited removal process, so that we don't have to have these kinds of challenges over every little thing. And we acknowledge that, but what we are saying is in terms of reinstating a deportation order, when it says re-entry into the United States, she did not have the legal... But there's no indication that Congress was engaging in your splitting of hairs of re- or entry, it's just re-entry. And re-entry is the act of re-entering, and she was, she did enter at one time. And it wasn't ambiguous to her as to what her status was, right? No. And she knew that she had a prior order barring her from coming into the United States. Whether she disputed that she had claimed that she was a U.S. citizen or not is irrelevant. At this point, she knows that she has an order barring her from coming into the United States without permission. And she came into the United States without permission. She did come into the United States without permission. However, the language of the statute specifically says re-enter. It could have just simply said any deportation order and it is reinstated. But it did not say that. You have less than two minutes left. And I do not have anything further to add to that point. But my overarching point is, had this been contemplated that any... You remember what rebuttal, you're not saving any time? I'll save time. Okay, we'll hear from the government. Morning, may it please the court. My name is Craig Newell and I'm here on behalf of the Attorney General. Ms. Tellez only quarrels with the last prerequisite for whether her expedited removal order could be reinstated, whether that was met. And that is whether she re-entered the United States illegally. Neither of the two arguments she raises, however, have no merit. And they actually, they stand in contradiction to the facts of the case and the text of the... Did she make an entry the first time she was here? Yes, she did. Don't we usually turn people back at the border without allowing them to re-enter? I mean, sometimes people come in and we refer them over to secondary and then we just say, no, you're not coming in. And we engage in a little bit of a fiction, even though people have sort of stepped across that international line, we don't regard them as having entered. What made her appearance the first time different? What made it different is that... Let's see how to say it. She did, in common terminology, entered into the territory of the United States when she was at the border. What Ms. Telles is relying on is the entry doctrine, which was a legal fiction that was needed pre-errora when the statute turned down whether someone formally entered or not to determine their procedural rights. And now that Congress has taken out the definition of entry, we refer back to the prior judicial definition. This was discussed in the Yong Jun Lee case, which was a criminal entry case. So there's a similarity there where the statute turns on the term entry. And what entry means now is a coming from the outside, and that outside is either a foreign port or a foreign place, and there's no dispute that that... So the concept of formal entry as being free of restraint no longer exists in immigration law? There's a yes and no, unfortunately, to that. Excuse me? There's a yes and a no, Your Honor, to that. The concepts underlying the entry doctrine still exist. But whether it's needed as a legal fiction to determine the procedural rights of certain classes of aliens, that legal fiction's not needed anymore because the Immigration Nationality Act expressly defines the procedures for the certain classes of alien. For example, arriving aliens, such as Ms. Tellez, are subject to expedited removal proceedings. Someone who's been admitted or someone illegally present here without admission can be placed in regular Section 240 removal proceedings. What about somebody who is turned away at the border, as Judge Bivey suggested? They come to an inspection point, they present documents, and they say, sorry, these are not good enough, you go back. If they are... Have they then entered the United States? Not for the purposes of the reinstatement statute, because someone who is just voluntarily returned at the border without being removed under an expedited removal order, that person would not be subject to the reinstatement statute because the first prerequisite is whether you were removed under a removal order. That would not be the case for such a person who's just turned around at the border. Is the difference that she was sort of temporarily admitted to the United States because she claimed to be a U.S. citizen? Was she referred to secondary? Yes, she was, and then in secondary, she admitted that she was not a citizen and that she had no permission to enter. Doesn't the statute kind of stand alone? It's not in conflict with anything else. Why can't we just look at the plain language of the statute and say, she came here before, she was, and she has re-entered? I agree, Your Honor. If you just look at the text of the statute and what she did. Is there any reason to look beyond the text of the statute that you can come up with? None that I see. What about the opposing counsel's argument that you can't have a re-entry, you can't have a second entry if you don't have a first entry? There's some force to that. Why isn't that sort of a plain language argument? It's not a plain language argument because that is based on a definition of entry and a legal fiction of the entry doctrine that's no longer... No longer what? Has it been repealed? No, it's not needed as a fiction. The statute defines the procedural rights. The problem with the entry doctrine, the entry doctrine's sole purpose is to figure out what process is due to certain aliens. It doesn't... And when did this change? What specifically changed? Because I remember having cases where the question was, was the guy sufficiently inside the country, he was apprehended just as he was crossing the border at a non-checkpoint. I mean, somebody who just ran the border, but then he was stopped, he was observed crossing, and then before he got too far, he was stopped. And the question was, had he entered? And the answer was, no, he hadn't entered because he was not free from restraint. At no point was he free from restraint. Are those cases now gone? Is that whole case law now... No, it's not, Your Honor. First, to back up, the change occurred with the enactment of Herrera where Congress removed the definition of entry and replaced... Herrera? Herrera, yes. Okay, not Herrera, Herrera, Herrera. Okay. Okay, I got it. Replaced it... And what date was that again? 1996. 1996, okay. Yes, and replaced it with whether an alien is admitted or not. So talk to me about the guy who I just talked about, the guy who is observed crossing the border, observed, so agents are there as he walks across an unmarked border, but they see him coming, and before he can get too far, he clearly steps into the United States, he is in 100 yards, and they chase him down and arrest him. Has he entered, or is that concept no longer valid? Can he be removed, for example? Can he be put into removal proceedings? Yes, the concept... That person now would be considered an arriving alien who is subject to expedited removal proceedings, and because he was apprehended within 100 miles of the border, and he can be placed in the expedited removal proceedings, that is the procedure that he is due, and then... So the concept of entry no longer has a validity? I mean the formal entry as we knew it. Right, it is grafted into now whether you're admissible or admitted, and it still applies in that manner. I guess that's the best way to say it, but because... There's got to be a better way, because I had no idea what you just said. Why don't you try even a better way of saying it? Right, but I think the key here is that the entry doctrine has no purpose within the reinstatement statute. The reinstatement statute focuses on whether you had a removal order, whether you were removed, whether you re-entered. And there was a removal order here, right? Yes, there was. Do you have to be in the United States to be removed? Yes, it would not make any logical sense, because what would you be being removed from? You came from the outside, the outside being Mexico. She came over the border into U.S. territory, U.S. soil, was put in secondary inspection, that's where they put her through the expedited removal proceedings, and she was then thus removed to her native country. The removal is what we used to call deportation, right? Yes, Your Honor. And before IRERA, there was no expedited deportation proceeding? No. I'm trying to remember. No, there was not. I was here at that time, but I... Before IRERA, there was deportation proceedings and exclusion proceedings for those... Exclusion. Exclusion, for those who were stopped at the border seeking admission but had no permission. And that's the key here. Ms. Tellez, both times, had no permission to enter. Her other argument about being waved through is contrary to the facts. She had no permission to enter. I don't think anybody's buying that, so you can save your breath. As I see my time is down, if the Court has no other questions, I submit that the Department of Homeland Security properly reinstated Ms. Tellez's expedited removal order. Thank you. You have a little more than a minute. Just to elaborate on a question that was posed to me earlier about the procedures available to an alien when they are subject to an expedited removal, there actually is no appeal to that. The officer acts in that capacity as judge, jury, executioner. And that's an important distinction to look about what is an entry and what is being simply inspected at the border. Does that violate the due process clause? It has deemed not to violate due process having expedited removal, but that's very indicative of what is actually happening at the border because they have... If we've already held that it doesn't violate the due process clause, what possible challenge do you have to that procedure? It's not a challenge to the procedure. I'm trying to make a distinction between what is an entry and what is performed in expedited removal, which has a basic... Are you raising a collateral attack on that? On expedited removal? Yeah. I'm not raising an attack. Are you, for example, claiming she in fact was a citizen? Or are you claiming, no, she didn't claim to be a citizen? Are you sort of challenging the underlying basis of that order? We are vehemently challenging that she claimed to be a United States citizen. The only evidence of that is the statement of the officer. There's no documentation. The fact that she was... That was determined on expedited removal without any... But how can you challenge it? Because that's the procedure that Congress has provided. You told me that you don't have a due process clause challenged to that because it's been upheld as consistent with the due process clause. So what other basis do you have for challenging that at this point? What would be the basis for challenging that at this point is even if the court agrees with the petitioner to issue her a notice to appear to challenge that in front of an immigration judge. She has a U.S. citizen husband. She has four U.S. citizen kids. One of them is blind and autistic. And to simply say to this woman that the word of an immigration officer is going to preclude you from any rights or benefits in the United States when you went to the border. And you want to accept that this was an entry into the United States that allows a reinstatement order and not give her the opportunity to go in front of a judge and have her present her case. Because otherwise, she would be able to adjust status in the United States and live here with her family. Otherwise, she has absolutely no recourse if she is not given the opportunity to go in front of an immigration judge. And the sole what would be accepted as an entry into the United States is this single statement by an officer. Have you tried to negotiate this with the Department of Homeland Security? We have. Okay. And that was unsuccessful under any of the programs that they have? Well, I don't know if you would constitute it as a program. We have asked for prosecutorial discretion for her to remain in the United States and take this hearing off calendar. That was denied. We approached this with Citizen Immigration Services and informed them that she did not make this statement. They accept blankly that the officer was correct and she was wrong and denied her adjustment of status. And so that is the extent that it's been addressed. Okay. Thank you. Thank you. The case is argued and will stand submitted.
judges: Kozinski, Bybee, Walter